Good morning. I'd like two minutes, please, at the end. Good morning, Your Honor. I'm Jeremy Fellows, appearing on behalf of the appellant, Limitless, LLC. It's an Oregon limited liability company. This is a Fair Labor Standards Act case that involves an alleged underpayment by my client of overtime wages. Now in an overtime wage claim, element number one that the plaintiff has to prove is that they actually worked overtime hours. And as I have pointed out since the start of this case, the plaintiff in this case has never alleged she actually worked the hours she says are on the time cards that she submitted. She says those are the time cards I submitted and we agree with that. And I pointed out she submitted an affidavit stating that the hours that she had submitted the time cards that are in evidence. And I pointed out not only that those were illegible, but that, and this is in my response to their motion for summary judgment, I said you haven't said you actually worked those hours. And I would point out that our fourth affirmative defense in this case is that she had falsified her time cards. And so I was expecting that in response to that response, I would get a reply from Ms. Hike's attorney saying, oh, sorry for the oversight. Yes, in fact, these are the hours that she worked. Well, still we have nothing. And in fact, Mr. Egan's argument, the same issue again on appeal, is that I should be stopped from making this argument for reasons which, I have to say, I find are illogical. He's basically saying that my client took those time cards and somehow made use of them to get a tax advantage. Well, that's like saying you should be stopped. Kagan. Well, let's talk about what's on appeal here, if I understand, because it seems like you submit an affidavit with the hours that Ms. Hike claims that Ms. Hike worked. Is that correct? The affidavit states that these are the time cards that she submitted. Okay. So let me ask you, why shouldn't the fluctuating work week apply here? Well, it shouldn't if you, this is a very interesting question. The two cases that the judge relied upon, in her opinion, the Wallace decision, which then in turn cites the flexible work week. And what is key to an understanding of your question, your honor, is that those cases are what are called mischaracterization cases. They are cases, for those of us in the business, where an employer initially mischaracterizes an employee as being exempt from the applicability of the Federal Labor Standards Act. And the allegation is then later made that, oh no, they're non-exempt. They should have been entitled to overtime wages. So when you have a fixed payment, a salary that's being paid to someone who is mischaracterized as being exempt, it is understood by both the employer and the employee that none of that money is overtime money. It's all straight time wages because it's a mischaracterization case. Now, in our case, it's the exact opposite. It was understood from the get-go that she was entitled to overtime wages, that she was entitled to coverage under the Fair Labor Standards Act. And so it's not a situation where one is justified in saying that that flexible work week law does not, or flexible work week method does not apply, which is what they said in those two cases. And they said that because, and let me just quote from the decision, because it's very clear that that was the basis of their decision, and this is the Zewalewski decision that is cited in the Court's opinion where she makes this determination. I'm quoting now from Zewalewski. It says, This Court is not persuaded by the reasoning behind the retroactive application of the flexible work week method in the misclassification context because it presumes that the employees possessed a clear understanding that their fixed compensation, which did not provide for overtime premiums, was for all hours worked. Well, in our case, it was clear that the plaintiff knew that she was getting this payment for all hours worked. That is a statement that is in the party's joint statement of agreed upon facts. So you can't take the position that the flexible work week should not be applied because everyone was assuming she wasn't entitled to overtime, which is what these cases, the mischaracterization cases, say. Sotomayor, does this section 778.114C state that overtime payments must be made contemporaneously with regular pay? Actually, no. Actually, no, it doesn't say that. And you can see the — in Appendix 1, I think it's the third page of that, in my opinion, I have the actual language from 114 sub c. But I don't want to mislead the Court into thinking that's not the rule. The fact of the matter is that particular provision is cited in the Zewalewski case as if it said that, they made a mistake. And then the Wallace case, which is also cited in the Court's opinion, makes the same error. The actual language is found earlier in 114. So it's actually 114 sub a to be specific. Counsel, I'm a little confused about your position. I thought that at this point that your client had essentially conceded there was filsa liability, but you state that the real issue is a correct amount of damages, if any. Am I mistaken? Well, you're mistaken to the extent that we are still maintaining, as I did in my motion for summary judgment response and in the appeal that I just filed, we are still maintaining that there's no evidence that she actually worked those hours. Okay. So from your perspective, she may not have worked at all. There's no evidence that she did. Well, she doesn't say she worked the hours she's now claiming should be considered overtime wages. And that's a that's the And that's because you say that the time cards are not clear. She submitted those and said these are my time cards. You're saying that doesn't, that's not evidence of how long she worked. In fact, I'm saying that that evidence, if you have a situation where you say to someone, gee, all you've done is submit time cards, you haven't yet stated in a declaration or under oath that you actually worked those hours, if you make that statement, which I did in my response to their motion for summary judgment, if in response they simply say, well, I'm not going to say I worked those hours, I'm just going to say those are my time cards, that's evidence, that's circumstantial evidence that she didn't work those hours to me. Well, let me at least tell my perspective on this. You all paid her the $200, right, during the record that time period? Each day. Okay, so that was, so you must have thought she worked, or you wouldn't have paid her in the first place, right? Well, they certainly thought she worked, and the fact is, it turns out she falsified her time cards. That's what we're alleging in the fourth affirmative defense in the answer to their complaint. But the time cards only deal with how much she worked, how many hours. It doesn't establish that she didn't work. When you essentially paid her, you must have assumed that she was working for you. Well, of course, they assumed she was honest. They assumed the time cards were correct, and they didn't find out later until she sued them that she had falsified her time cards, at which point we said, you didn't say that you actually worked these hours. Please now do so. And she refused to say that. But does it not, though, get back, as I suggested a few minutes ago, to how much is owed, if any, not whether anything is owed, because you paid her $200 a day. Nobody distinguished  That's the main issue on appeal. Right. Pardon me? That's the main issue on appeal. I would say it's the most important issue on appeal is how one deals with the situation if you just make the assumption that she had said, I actually worked those hours. Because I think, you know, the trial court just said, well, I realize that's an element of her case. There really is no evidence of that. Do you not agree that your client owes Ms. Huck some amount? My client owes for whatever the law obligates my client to pay for the hours she worked. She has an obligation to state under oath that she actually worked those hours. But you did not argue this falsification in your briefs. I argued in the brief that she hasn't yet said that she even worked those hours. You are standing up there saying falsification like you argued that substantially in your brief, and you have not. So I'm trying to get to what you did argue in the brief and how much is owed. So do you acknowledge, because it seemed like you did in your brief, that your client owes Huck some amount? I just can't. I'm just trying to figure out what the dispute is. Well, I made two arguments on the point that you're making in the brief. I said, first of all, that she hasn't yet stated that she actually even worked these hours. That was point one, and it's in the brief. And then I said, assuming she worked these hours, there was an error made by the judge in determining how much money she should have been paid, because she refused to use the flexible workweek standard based on these two decisions, which involved mischaracterization issues. So they were not on point. Well, it seems like the amount of money owed is relatively small. Do you agree with that? It's only like $1,400, which is why when this case first came out, I said, gosh, rather than go litigate and wind up before the Ninth Circuit Court of Appeals someday, let's just write a check for $1,400. I mean, for God's sake. But is it beyond the $1,400? Is it beyond the $1,400 at this point? Well, as it turns out, after we made the payment of $1,400, the plaintiff, who is now no longer practicing, I understand, says, oh, gosh, thank you for the $1,400 payments. I'm now going to go ahead and file a lawsuit against you, and I want, it was like, I don't know, $20,000 or something like that, with attorney fees. How much is the difference now between the hours that you think that she is owed under the fluctuating work week? Well, at most, it would be the $1,400. We're a little bit shy of that. Assuming she actually worked all the hours she said she worked, and assuming you used the flexible work week standard, then that $1,400 would have covered it. And so the only thing that she would have been entitled to in that scenario, if she had said, I actually work these hours, would be an attorney fee. And the judge determined that she was not entitled to an attorney fee because he was late in filing his request for a fee. So getting back to what I think we're all struggling with here, it sounds like, if we agree that the fluctuating work week method is what should have been used, and if we send it back, then you're going to say, well, before you get to that, there's no evidence here she worked at all. Is that right? Well, I would say that. And if it gets sent back, I have no doubt that the judge will probably say, go ahead and submit evidence on that if you want to. At which point, I would then say, well, we have our evidence. I can take depositions of people to say you didn't work those hours, which I didn't want to do because the cost of doing that was far in excess of the amount in controversy. And then at that point, no one could file a motion for summary judgment, which is what brought us here, because there would be a factual dispute. She'd say I worked the hours. My guys would say, no, I didn't. No, she didn't. You have two minutes, if you want to say. Go ahead. I'll say it in my two minutes. Excuse me, could I ask you just one question? Absolutely. Do not all these considerations suggest that the case is appropriate for mediation and settlement now? We would be happy to mediate at any time, and we'd love to do that. So... Okay. Any other questions right now, or are you okay? Okay. I'm okay. Okay. We'll hear from Apolli. Morning, Your Honor. Thank you, Your Honor. John Egan for Plaintiff Karen Hike. This was a mischaracterization. Actually, my friend, Mr. Fellows, calls it mischaracterization. You'll see in the case law it's called misclassification. But that's the basically situation where somebody just doesn't get overtime. When the employer treats them, does not ever pay them overtime, if you look at Ms. Hike's pay stubs, she was never paid overtime. That's not at issue in the case. So I don't know if it's a semantic issue that they say now that she wasn't misclassified, but they certainly paid her as if she was exempt from overtime because she never received any overtime. Misclassification case or mischaracterization case, it seems from everything that I've read that you all are about four or five hours apart from the amount of overtime that is owed. Am I correct or am I incorrect? I don't know that there's much difference between the parties on the math in terms of . . . Why are we here? I just wanted to follow up with what Judge Corbin said. I mean, why aren't . . . I'm perplexed as to why this hasn't been resolved up to this point. Well, plaintiff has a judgment that she wants to collect and the defendants think that they don't owe any money. I think that's where we're at. But they paid you $1,400, isn't that correct? Yes, that's . . . So how much beyond the $1,400 do you claim on behalf of your client that you're owed? I'm trying to figure this out. Okay. So $1,400 was the amount of the unpaid overtime. If you only pay an additional half-time for the overtime hours, that would be if the fluctuating workweek applied. But it doesn't apply and so she gets time and a half. That's three times $1,400 doubled for liquidated damages. So it's approximately $9,000. What if the fluctuating does apply? If the fluctuating workweek applies, and I can talk about why it doesn't . . . But if it did apply, then it would be the $1,400 of liquidated damages and then any claim for attorney fees. So those would have been the damages at the trial court if the fluctuating workweek applied. And attorney's fees, the district court denied the attorney's fees? She did, yes. And so you agree that under the fluctuating workweek, the $1,400 would have covered it? Again, I don't have the exact math in front of me, but that's approximately what it was. So a late payment, however, does yield a claim for liquidated damages under Biggs v. Wilson, that Ninth Circuit case. So the plaintiff is still entitled to liquidated damages even if the fluctuating workweek applies. But let me talk about why it doesn't apply. Fluctuating workweek requires that the weekly salary be the same no matter how many days the plaintiff works. And that just absolutely was not the case here. When the plaintiff worked less than five days, she received less than $1,000. So fluctuating workweek just does not apply on its own terms. Just even according to the language of the statute, there was no guaranteed minimum salary for the week because if she worked less than five days, she got less than $1,000. So that's according to the terms of it. There's also the judicially created exception where if you misclassify an employee, in other words, if you don't pay them over time as you go along, you have to pay time and a half. You don't get the benefit of the half-time damages. So, and that's the same with the bellow contract in 207-F, which were the two half-time exceptions that Judge Brown specifically discussed when the defendants didn't cite anything at all to give her anything to go on at the trial court level. She took the two most common ones, the bellow contract under 207-F and the fluctuating workweek under 778-114, and neither of them apply because she was not employed on a workweek basis. She didn't receive a minimum per workweek no matter how many hours she worked. If she didn't work a day, she didn't get all of the pay for the week. Counsel, let's assume arguendo. Sure. That we conclude that the fluctuating workweek method should have been applied here and that Judge Brown miscalculated the damages. We're talking really de minimis stuff. In that circumstance, would you be entitled to attorney fees? If I, well, so, not at the trial court level. She denied fees for the previous attorney's work through the date of the trial. But on appeal, if we would have defended the appeal, because I think the defendants have sought a complete reversal of the summary judgment motion, so depending on how it turned out after the appeal, it would be up to the trial court to determine the success of the appeal. Could they get attorney fees against you if they thought the appeal was frivolous? If it's frivolous, then yes. I mean, the FLSA, and that's under the FLSA, they would have to file a motion. There's no counterclaim for frivolousness, and we discussed why that is in our briefs. But yeah, if it's found to be frivolous, they can file a motion for attorney fees under the FLSA. My colleagues have suggested, and I would join in this, this is one of those cases where we all just kind of scratch our heads and wonder what this is doing before the Ninth Circuit. I don't know what your collective fees must be, but there are many, many times I'm sure the dollar is involved under either scenario. Would you like us to refer this matter to mediation before you get a decision from us, or what's your pleasure? You know, we're happy to talk at any time. I prefer settlement discussions to mediation just because mediation eats up more time. I think the value of the time often makes a difference. No, I just, the reason I ask is because we have, our court mediation solves about a thousand cases a year. I was astounded when I joined the court to see how many were settled that way. I mean, you can always talk, but I think it would be helpful for the court to know whether you're willing to join, I think your opposing counsel said he's willing to mediate, whether we should spend any more time on this. We can give you an answer. We will give you an answer if we don't do that, but are you willing to agree to submit this to mediation before our court mediators? My concern is as to the amount of time, but yes, yes. So you would? Yes. Okay. All right. Let me just follow up on something you just said regarding the fluctuating work week, because it seems that your stipulation regarding the statement of facts says that Ms. Hike's weekly salary was $1,000. Is that correct? The stipulation says $4,000, but if you actually look at the evidence, that's only in weeks in which you worked five days. Well, I look at the stipulation because otherwise, I mean, stipulation means you stipulate to those facts, and that's usually all the court has to look at when we're considering items, and that seems to rebut your argument that there's no weekly salary for the fluctuating work week here. Well, but the stipulation also says $200 a day. So to the extent that there's an ambiguity there, it's resolved by the other evidence in the record. So that's where that works. I don't want to abandon my argument that the defendants did not preserve this objection, that they invited any error by not citing any law whatsoever to the trial court in telling her what sections, if any, she should go to that justify the result that they seek, which is half-time damages instead of time and a half damages. The Ninth Circuit has said in the past specifically that if you don't argue something to the trial court, you can't bring it up on appeal, and I think that's the situation we have here. I'm not sure how much there is to talk about on that issue, and I'm happy to answer any questions, but I just want to make sure that we reiterate that point. We don't think we should even be here because this was unpreserved. And I can see that the trial attorneys for both sides did not exactly give model briefing to the trial court in this case, but the preservation burden is on the defendants in this case to show the appellants as to why they're entitled to Ninth Circuit consideration. And on that, Judge McGee, on your point about the actual language of the stipulation was that she was paid according to the terms of her contract, $200 per workday for a total of $1,000 per workweek, regardless of the number of hours that she worked. But that just says what she was paid. The Fifth Circuit put it better than I did, and this case isn't cited in the materials, but it's a good summary of the situation that says that they understood they were not receiving overtime pay does not imply that they clearly understood their salary to compensate unlimited hours each week. So the agreement ---- Did that just come out last week, the Fifth Circuit decision? No, no. It's from 2017. Why didn't you cite it previously? No. I just found it in reviewing for the oral argument. I like the way it sounds. I just didn't want to pretend that I had made it up. I'll bet Judge Brown would be shocked that you didn't cite that to her. Well, I wasn't the trial attorney. I came in after the trial for the purposes of the appeal only. But an agreement ahead of time that we're never going to pay you any overtime, no matter how many hours you worked, that's not enforceable under the FLSA. That's not an agreement that whatever I do pay you counts for overtime, too, which is an illegal agreement under the FLSA. So there was no agreement here that the hours that they're ---- the money that they're going to pay me covers all the hours that I work. It was just I'm never going to get paid overtime. That's the agreement. That's the way that the trial court read this contract, the stipulation, as to what the terms of the contract were. And I think that her findings were correct. And I think that they're not an abuse of discretion, certainly. Anything else, Your Honor? Any other questions? I think not. Thank you. Thank you, counsel. So we have a brief rebuttal here. Thank you, Your Honor. Unless the Court has any questions, I just want to let you know that when I walk out the door downstairs, I'm retiring from the practice of law. This is my last official act to be here today. And I've been in, what, 13 different states appearing before federal judges, but I've never appeared before a New York judge. So this is a great thrill for me to be able to do that today. So unless you have any questions of me ---- The only question I would have is, since you're going to be retiring, and by the way, we congratulate you on your career. We'll miss you. But if opposing counsel has agreed to have mediation, I think you indicated you are willing, but you won't be doing it. So can you bind your client to that? I have already spoken with my client, and the Littler Mendelson firm has agreed to represent them going forward if they should need any representation at trial or on further appeal or anything else. But if they want to have me, I will extend my retirement to participate in a mediation because I would like to see this case get resolved. Okay, very good. And we hope that when you go out, there will be no protests. And if there are, I may not have anything to do with you. Thank you. Congratulations. Thank you, counsel, for your argument. The case just argued is submitted, and the Court stands in recess for the day.
judges: M. Smith, Murguia, Korman